# United States Court of Appeals for the Federal Circuit

2009-3020

STEPHEN E. WILLIAMS,

Petitioner,

v.

SOCIAL SECURITY ADMINISTRATION,

Respondent.

Phillip R. Kete, American Federation of Government Employees Local 1923, of Baltimore, Maryland, argued for petitioner.

Jacob A. Schunk, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, and Maame A.F. Ewusi-Mensah, Attorney.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2009-3020

STEPHEN E. WILLIAMS,

Petitioner,

v.

SOCIAL SECURITY ADMINISTRATION,

Respondent.

Petition for review of the Merit Systems Protection Board decision PH-0752-08-0275-I-1.

_____

DECIDED:   November 9, 2009

_____

Before LINN, FRIEDMAN, and DYK, Circuit Judges.

FRIEDMAN, Circuit Judge.

The petitioner Stephen E. Williams challenges the Merit Systems Protection Board ("Board")'s affirmance of the Social Security Administration ("Social Security")'s removal of Williams for his participation in an income tax fraud sponsored by another Social Security employee, Joel Edwards.  The fraud involved claiming as dependents on federal tax returns children who were not the taxpayers'; the children's Social Security numbers were shown on the returns.

Williams contends that Social Security did not show a nexus between his misconduct and the efficiency of the service.  We reject that contention.

One of Williams' challenges to the penalty of removal is that he was treated discriminatorily because Social Security removed him but re-employed Edwards, who was more culpable than Williams was. We conclude that neither the record before the Board nor the Board's findings and conclusions are adequate to enable us to evaluate and adjudicate this issue. Accordingly, we vacate the Board's decision and remand the case to that agency for it to develop the facts on this issue and, based on that augmented record, to make the necessary and appropriate findings and conclusions and redetermine the question.

I

The facts relating to the tax fraud, Williams' participation in it and his removal are set forth in the Board's administrative judge's opinion and, as that opinion stated, are undisputed.

In 2002, Williams, then working for Social Security in the mail room in Baltimore, Maryland, arranged with fellow employee Edwards for Edwards to prepare and file his 2001 federal income tax return. In that return Williams improperly claimed two children as his dependents, although Williams had no children. Edwards obtained from the children's father and listed on the tax return the children's Social Security numbers. Williams' 2001 tax return was filed on February 1, 2002, and Williams claimed a refund.

On audit of Williams' return, the Internal Revenue Service discovered the fraudulent scheme. By the summer of 2002, Social Security's Inspector General's Office "was aware of the charges and the individuals involved." Williams' immediate supervisors, however, "did not know of his involvement in the scheme until 2007."

In June 2002, Williams was promoted to a position that gave him access to Social Security's "database of social security numbers." He received additional promotions and three awards "for his excellent job performance in 2005 and 2006."

A criminal information was filed against Edwards in December 2006, charging him with tax fraud. The information listed Edwards' "clients in the scheme" by name, including Williams, five of whom "were SSA employees during their participation in the scheme." The information also stated that Edwards "fraudulently claimed dependents on his own federal individual income tax returns." Count Six accused Edwards of submitting a false tax return "in the name of STEPHEN WILLIAMS" which "falsely claimed the two children" as dependents and "falsely claimed a refund of $4,192."

On March 9, 2007, Edwards pleaded guilty. The next day a Baltimore newspaper included a story about Edwards' scheme and his guilty plea, which stated that the scheme involved other unnamed Social Security employees. Three days later Social Security detailed Williams to a different position that did not require access to its database of Social Security numbers.

In November 2007, Social Security proposed, and in January 2008 effected, Williams' removal for "conduct unbecoming of a federal employee." The deciding official found that Williams "committed the misconduct as charged, and that there is a substantial connection between the charged misconduct and the efficiency of the Federal service." The official informed Williams that "[y]our actions, which were intentional and done for personal gain, have violated the Agency's trust in you to carry out your job duties responsibly. Even more importantly, the problem of identity fraud through the misuse of Social Security Numbers is one of the biggest problems facing

the Agency." Finally, the official found "the proposed penalty to be fully supported by the charge and evidence of record."

The Board affirmed Social Security's action. In her initial decision, rendered after an evidentiary hearing, which became the Board's final decision when the Board refused to review it, the Board's administrative judge concluded that Social Security had proven its charge by preponderant evidence. She ruled that there was a nexus between Williams' misconduct and the efficiency of the service because the agency's "mission . . . is the use and safeguarding of" Social Security numbers. Finally, she upheld the penalty of removal as "within the bounds of reasonableness and promot[ing] the efficiency of the Service," ruling that "the seriousness of the charge, given the mission of the agency, outweighs the appellant's job performance and rehabilitative potential."

II

Williams' principal substantive challenge to Social Security's ruling that he engaged in "conduct unbecoming a federal employee" is that the agency failed to show a nexus between his misconduct and the efficiency of the service. We disagree.

Williams filed a federal tax return listing the Social Security numbers of two children, not his own, whom he illegally claimed as dependents and for whom he claimed a deduction. Social Security justifiably concluded that an employee who engaged in such misconduct could well again misuse Social Security numbers at some point in the future. As the deciding official stated in effecting Williams' removal, "[y]our actions, which were intentional and done for personal gain, have violated the Agency's trust in you to carry out your job duties responsibly. Even more importantly, the problem

of identity fraud through the misuse of Social Security Numbers is one of the biggest problems facing the Agency."

Williams contends that his trustworthiness was shown by the facts that Social Security continued to employ him, and indeed promoted him, for six years after his misconduct and did not remove him until after Edwards had been criminally charged and convicted. While the Board found the delay "troubling," it ultimately concluded that the delay did not make discipline inappropriate. Social Security moved against Williams approximately eight months after his immediate supervisor first learned of his misconduct. Moreover, as the Board pointed out, "[t]he Assistant United States Attorney (AUSA) preparing the case against Edwards asked the agency not to take action with respect to the appellant and the other SSA employees who had been part of Edwards' tax scheme." Finally, and perhaps most significantly, the Board concluded that the delay was not prejudicial because "the appellant has admitted and stipulated to the charge, which, in any event, primarily involved documentary evidence, i.e., the tax return, rather than the memories of witnesses." We cannot say that the Board's conclusions were in error.

We therefore affirm the Board's conclusion that Social Security established the charge against Williams.

III

One of the grounds upon which Williams challenged the penalty of removal as unreasonable was that Social Security subjected him to impermissible disparate treatment in comparison to its treatment of Edwards. He asserted that the agency had re-employed Edwards, who was more culpable than he was, but had removed Williams.

If those are the facts, they would appear to raise a serious question about the reasonableness of Williams' penalty of removal. Edwards was more culpable than Williams. He originated and organized the tax fraud scheme, actively carried it out and was criminally convicted for his participation in it. One of the Douglas factors that agencies are required to consider in determining an appropriate penalty for employee misconduct is "(6) consistency of the penalty with those imposed upon other employees for the same or similar offences." Douglas v. Veterans Admin., 5 M.S.P.B. 313, 332 (1981).

The administrative judge stated that Williams

> has worked for six years since the misconduct and done an excellent job. He has had direct access to SSNs for at least five years and there have been no problems. That shows strong rehabilitative potential and seriously undercuts the agency's claim that he cannot be trusted. On balance, however, I find that the seriousness of the charge, given the mission of the agency, outweighs the appellant's job performance and rehabilitative potential.

If Social Security had re-employed Edwards but removed Williams, that could have shifted the balance.

The administrative judge's sole discussion of this issue was the following sentence in a footnote dealing with "[o]ther minor issues [that] were raised that do not have real significance in the consideration of the penalty":

> Similarly, the testimony regarding Edwards['] return to the workplace is not relevant because Edwards was not in the chain of command of this supervisor and therefore is not similarly situated for purposes of a claim of disparate treatment.

The fact that the supervisor who gave this testimony did not directly supervise Edwards does not justify treating his testimony as irrelevant. While the fact that two

employees are supervised under different chains of command may sometimes justify different penalties, in this case the administrative judge has not explained, and the record does not reveal, why the different chains of command would justify the agency treating Edwards, the perpetrator of the tax fraud, more favorably than Williams, who merely had participated in it.

At oral argument, government counsel, in response to extensive questioning by the court, stated that Social Security had not re-employed Edwards. According to counsel, the agency initially removed Edwards when his tax fraud was discovered. After Edwards was criminally charged, however, and in accordance with its usual practice, Social Security rescinded the removal and substituted an indefinite suspension. After Edwards was convicted, the suspension was terminated and the removal reinstated.

Government counsel conceded, however, that the record showed none of these facts.

We decide cases on the record before us, not on the basis of facts stated by counsel. The record before the Board, which is the only record we have, does not establish government counsel's factual description of what occurred, and we cannot base our decision on those statements.

Considering all the circumstances, we conclude that the appropriate disposition of this case is to vacate the Board's decision and remand the case for further Board proceedings. On remand, the Board should (1) develop, as fully as possible, the facts relating to Social Security's action about Edwards' employment, (2) make findings and

conclusions on those issues and (3) based on that augmented record and those findings and conclusions, reconsider and redetermine the issue.

We leave it to the Board initially to determine what procedures to follow in performing those tasks. We neither express nor intimate any views on what would be an appropriate resolution of this case. We hold only that the Board must further develop the record on this issue and, in light of that augmented record and its additional findings and conclusions, render a new decision on the penalty issue.

## CONCLUSION

The decision of the Board is vacated insofar as it upheld the penalty of removal, but otherwise is affirmed. The case is remanded to the Board to develop the record on the disciplinary actions Social Security took against Edwards, to make findings and conclusions on that issue and, in light of that record and those determinations, to issue a new decision on the penalty issue in this case.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.