**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| RODNEY HOWERTON, | DOCKET NUMBER |
| Appellant, | PH-0752-13-0292-I-1 |
| v. | |
| DEPARTMENT OF DEFENSE, | DATE: August 21, 2014 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Randolph A. Elliott, Camp Hill, Pennsylvania, for the appellant.

Karen L. Saxton, New Cumberland, Pennsylvania, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The agency has filed a petition for review of the initial decision, which sustained the agency's sole charge of Conduct Unbecoming a Federal Employee but mitigated the penalty to a 90-day suspension.  For the reasons discussed

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

below, we GRANT the agency's petition for review, AFFIRM the initial decision IN PART, VACATE it IN PART, and reinstate the agency's penalty of removal.

¶2 Following his arrest at work for off-duty misconduct, the agency placed the appellant on administrative leave and then indefinitely suspended him. Initial Appeal File (IAF), Tab 6 at 22-32, 43. The appellant did not appeal his suspension. He pleaded guilty in state court to a single felony count of possession with intent to deliver cocaine and was sentenced to 2 years of probation. *Id.* at 43. The agency issued a notice of proposed removal and, following the appellant's oral and written replies, removed him on a single charge of Conduct Unbecoming a Federal Employee. *Id.* at 51-56. The appellant appealed to the Board. IAF, Tab 1. Following a hearing, the administrative judge found that the agency established the charged off-duty misconduct and a nexus between the misconduct and the efficiency of the service. IAF, Tab 17, Initial Decision (ID) at 5. Although the administrative judge rejected the appellant's affirmative defense of race discrimination regarding the agency's choice of penalty, he mitigated the appellant's removal to a 90-day suspension because the agency was unable to explain why it had failed to discipline the comparator employees identified by the appellant, whose misconduct, although not identical to the appellant's, was (in the administrative judge's estimation) of similar or greater culpability, and, more importantly, for which those employees, unlike the appellant, received significant jail time. ID at 6-11.

¶3 In its petition for review, the agency argues that the administrative judge erred in his interpretation and application of Board law regarding disparate penalties, improperly concluded that the agency's search for comparators was inadequate, and failed to give proper deference to the agency's choice of penalty. Petition for Review (PFR) File, Tab 1. Because the Board must base its analysis of disparate penalties on a fully-developed record, *see Davis v. U.S. Postal Service*, 120 M.S.P.R. 457, ¶ 8 (2013) (citing *Williams v. Social Security Administration*, 586 F.3d 1365 (Fed. Cir. 2009)), the Board issued an Order to

Clarify the Record requesting additional information from the parties, PFR File, Tab 4. Specifically, the Board requested supplemental information concerning: (1) the duties and supervisory chains of the four comparator employees identified by the appellant; (2) whether any of these comparator employees had prior criminal convictions and, if so, what effect, if any, that information might have on the penalty analysis; (3) whether the difference in treatment was knowing and intentional, or whether the agency began levying a more severe penalty for a charged offense without giving notice of a change in policy; (4) the actual court documents concerning the comparators' convictions; and (5) why the deciding official came to the conclusion that the appellant lacked rehabilitative potential and what, if any, impact the appellant's prior conviction for engaging in similar conduct had on the deciding official's conclusion. *Id.* We have considered both parties' responses to the Board's order. PFR File, Tabs 7-17.[2]

¶4    Where, as here, all of the agency's charges have been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Woebcke v. Department of Homeland Security*, 114 M.S.P.R. 100, ¶ 7 (2010); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). In determining whether the selected penalty is reasonable, the Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency. *Woebcke*, 114 M.S.P.R. 100, ¶ 7. The Board recognizes that its function is not to

[2] We agree with the administrative judge's disposition of the appellant's affirmative defense of race discrimination. In order to prevail on such a claim, the comparator employees' circumstances must be "nearly identical" to that of the appellant, i.e., that they reported to the same supervisor, were subject to the same standards of discipline, and engaged in conduct similar to the appellant's without differentiating or mitigating circumstances. *See, e.g.*, *McCurn v. Department of Defense*, 119 M.S.P.R. 226, ¶ 17 (2013). The administrative judge correctly found, and the record on review confirms, that none of the comparator employees reported to the same supervisor or engaged in conduct that was conduct similar to the appellant's without differentiating or mitigating circumstances.

displace management's responsibility, or to decide what penalty it would impose, but to assure that management judgment has been properly exercised and that the penalty selected by the agency does not exceed the maximum limits of reasonableness. *Id.* Thus, the Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. However, if the deciding official failed to appropriately consider the relevant factors, the Board need not defer to the agency's penalty determination. *Id.*

¶5        The Board has articulated factors to be considered in determining the propriety of a penalty, such as the nature and seriousness of the offense, the employee's past disciplinary record, the supervisor's confidence in the employee's ability to perform his assigned duties, the consistency of the penalty with the agency's table of penalties, and the consistency of the penalty with those imposed on other employees for the same or similar offenses. *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 5 (2010); *Douglas*, 5 M.S.P.R. at 305–06. Not all of the factors will be pertinent in every instance, and so the relevant factors must be balanced in each case to arrive at the appropriate penalty. *Douglas*, 5 M.S.P.R. at 306. The seriousness of the appellant's offense is always one of the most important factors in assessing the reasonableness of an agency's penalty determination. *Schoemer v. Department of the Army*, 81 M.S.P.R. 363, ¶ 12 (1999).

¶6        We agree with the administrative judge that the appellant's misconduct--possession of cocaine with intent to distribute—was very serious. ID at 11; *see Brook v. Corrado*, 999 F.2d 523, 527-28 (Fed. Cir 1993).[3] We also find that the deciding official's conclusion that the appellant lacked rehabilitative

---

[3] In its response to the Board's order, the deciding official stated that he did not consider the appellant's pre-appointment conviction for a similar offense as part of his penalty analysis. PFR File, Tab 7 at 9 (affidavit of the deciding official). Accordingly, the appellant's prior conviction is not pertinent to the penalty determination in this case.

potential resulted from the proper exercise of his management judgment. *Woebcke*, 114 M.S.P.R. 100, ¶ 7. Specifically, in its response to the Board's order, the deciding official explained that, in his view, the appellant demonstrated a complete lack of candor in the disciplinary process. PFR File, Tab 7 at 7. We agree. For example, in response to the agency's proposed indefinite suspension, the appellant denied that he engaged in the misconduct and stated that "[i]f I was guilty I would resign and accept any punishment." IAF, Tab 11 at 10. Although the appellant later pleaded guilty to the offense, *id.* at 8, rather than accepting responsibility, he instead claimed in his oral response to the notice of proposed removal that he had been falsely accused by another drug dealer, PFR File, Tab 7 at 9 (affidavit of the deciding official). Under the circumstances, we find no basis for questioning the deciding official's opinion that the appellant's prospects for rehabilitation were low.

¶7 As stated above, however, the appellant has also raised a claim of disparate penalties. In *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640 (2012), the Board clarified the criteria necessary for showing disparate penalties. Specifically, the Board held that an appellant must show that there is enough similarity between both the nature of the misconduct and the other factors to lead a reasonable person to conclude that the agency treated similarly-situated employees differently, but the Board will not have hard and fast rules regarding the "outcome determinative" nature of these factors. *Id.*, ¶ 20. The agency's burden to prove a legitimate reason for the difference in treatment between employees is triggered by the appellant's initial showing that there is enough similarity between both the nature of the conduct and the other factors to lead a reasonable person to conclude that the agency treated similarly-situated employees differently. *Id.*, ¶ 24.[4]

---

[4] The agency complains that the administrative judge improperly concluded that its search for comparators was inadequate, characterizing its complaint in the context of discovery. PFR File, Tab 1 at 15-16. However, the comment at issue instead has to do

¶8    In its response to the Board's order, the agency reasserts its position below that it imposed the same discipline in this case that it had imposed with respect to a nearly identical comparator employee. PFR File, Tab 7 at 4, 9 (affidavit of the deciding official); IAF, Tab 11 at 22-28. Specifically, the agency states that, in 2010, it also removed an employee based on a charge of conduct unbecoming after the employee pleaded guilty to charges of Possession with Intent to Deliver. PFR File, Tab 7 at 9. The agency further states that, although the comparator employee had no prior discipline and 6 years of service, the deciding official considered the criminal misconduct to be very serious and determined that the employee had no potential for rehabilitation. *Id.* We note that this comparator employee's criminal misconduct resulted in his long-term imprisonment. IAF, Tab 11 at 22.

¶9    The agency also contends in its response that there is not enough similarity between the appellant and the four comparators he identified to lead a reasonable person to conclude that the agency treated similarly-situated employees differently. PFR File, Tab 7 at 4, 9-12. We disagree. PFR File, Tab 7 at 39-42. The appellant and comparator S.Y. both worked at the same installation, Naval Supply Center in Mechanicsburg, PA, where the appellant served as a GS-9 Distribution Facilities Specialist and S.Y. served as a GS-7 Lead Supply Technician. *Id.* at 39-40. However, the appellant and S.Y. did not have the same first or second-level supervisors. *Id.* at 12. Comparators V.O., F.O., and D.O. worked at a separate installation—the Defense Distribution Center, in New Cumberland PA—as a WG-5 Distribution Process Worker, a GS-12 Supply Management Specialist, and a GS-12 Distribution Facilities Manager,

---

with the agency's responsibility to defend its choice of penalty and the administrative judge's assessment of the agency's evidence. *See* ID at 8; *see also Lewis*, 113 M.S.P.R. 657, ¶ 6. Nevertheless, we find nothing inappropriate in the administrative judge's remarks.

respectively, and none shared common first or second-level supervisors with the appellant. *Id.* at 11, 41-42.[5]

¶10    Although one comparator, S.Y., was convicted of possession of a small amount of marijuana for personal use, *see* PFR File, Tab 11 at 5, none of the proffered comparators were convicted of possession with intent to deliver cocaine.   Each of the comparators had a history of criminal misconduct. Comparator S.Y. previously pleaded guilty to (1) misdemeanor driving under the influence (DUI) and was ordered confined for a sentence of 72 hours to 6 months, (2) misdemeanor possession and use of drug paraphernalia and confined for 1 to 12 months, (3) misdemeanor simple assault and received probation, (4) one count of first degree misdemeanor DUI and was ordered confined for a maximum of 90-days.  IAF, Tab 12, Exhibit 3; PFR File, Tabs 9-13.  Comparator D.O. pleaded guilty twice in 2005 to first degree misdemeanor DUI and appears to have been sentenced to imprisonment (60 months maximum).  IAF, Tab 12, Exhibits 2-5.  In 2007, V.O. pleaded guilty to one count of first degree misdemeanor DUI (highest blood alcohol level) and was sentenced to 45 days to 60 months of incarceration.  IAF, Tab 12, Exhibit 4; PFR File, Tab 14-15.  In 2009, F.O. was found guilty of Insurance Fraud and Theft, both third degree felonies, and sentenced to 23 months of probation.   In 2011, F.O. pleaded guilty to (1) misdemeanor DUI (high rate of blood alcohol) and was ordered confined for between 30 days and 6 months and (2) a second degree misdemeanor count of recklessly endangering another person and sentenced to probation.  IAF, Tab 12, Exhibit 5; PFR File, Tab 16.  It is undisputed that none of these individuals received any punishment from the agency for their criminal conduct.[6]

---

[5] As the administrative judge correctly noted, an agency's action is fairly subject to question if the comparator receiving more lenient treatment is a supervisor.  ID at 11; *see Reid v. Department of the Navy,* 118 M.S.P.R. 396, ¶ 19 (2012).

[6] The appellant also submits for the first time on review information concerning another comparator, BS.  PFR File, Tab 17.  Because comparator BS's alleged misconduct occurred in 2013 after the appellant's misconduct, the deciding official could not have

¶11    In light of the foregoing, we believe that the appellant identified individuals who were similarly situated to him in terms of their criminal records but whom the agency treated differently. As such, the burden shifts to the agency to proffer a legitimate reason for removing the appellant, who received no jail time for his off-duty misconduct, while imposing no discipline at all on the comparators, some of whom received jail time for off-duty misconduct that was equally, if not more serious, than his misconduct. ID at 10-11. We find that the agency has met this burden here. In his affidavit, the deciding official explained that none of the comparator employees identified by the appellant were arrested at work and that he was unaware of their off-duty misconduct until he was presented with information concerning these employees from the appellant. *Id.* In this regard, we note that the information provided by the appellant concerning these comparators was derived from his search of public court records; there is no indication that any of this information could have been discovered by reviewing the agency's personnel records; and there is no evidence that the comparator employees' supervisors were aware of the comparator employees' off-duty misconduct. *Id.* By contrast, the deciding official stated that he was directly aware of the appellant's off-duty misconduct because he was arrested on the agency's Mechanicsburg, PA installation during duty hours and in the presence of his coworkers and because his arrest, which involved multiple law enforcement officers, created a "spectacle" on the installation that resulted in an official report concerning the incident and an order barring the appellant from the facility. PFR File, Tab 7 at 9-10.

¶12    The deciding official also stated in his declaration that it appeared from his review of the appellant's materials that the four comparators had lesser-graded offenses than the appellant; that every conviction except one was either a

_____

considered this information in making his penalty determination. Accordingly, we have not considered the appellant's submission concerning comparator BS on review.

misdemeanor or a summary offense; and that the jail time served by the comparators appeared to be because the four comparators each had DUIs. PFR File, Tab 7 at 10. The deciding official further stated that the agency has never considered a DUI to be as serious of a criminal offense as drug dealing. *Id.* at 11. Thus, whereas the agency has granted work releases to employees who pleaded guilty to DUIs that resulted in incarceration and would potentially grant a work release to an employee involving drug use if the employee enrolled in its alcohol and drug prevention program, the deciding official stated that the agency has never approved a work release request for an employee with a drug distribution conviction and he would not do so. PFR File, Tab 7 at 10, 16-31, 33-35.

¶13        Considering the record as a whole, we find that the deciding official conscientiously considered the consistency of the penalty as required by *Douglas*. The agency has established that it imposed the same discipline in this case that it had imposed with respect to a nearly identical comparator employee. Moreover, there is no evidence in the record indicating that the difference in treatment between the appellant and the comparators he identified was knowing or intentional or because the agency began levying a more severe penalty for a charged offense without giving notice of a change in policy. Rather, it appears that the lack of discipline in those employees' cases was either because the agency was unaware of the nature of their misconduct, or, to the extent that it was aware, it had reason to believe that the jail time served by these employees was for lesser offenses such as a DUI.

¶14        Based on the foregoing, we conclude that, in making its penalty determination, the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Woebcke*, 114 M.S.P.R. 100, ¶ 7. Moreover, our reviewing court has long made clear that removal for the type of misconduct at issue here is well within the bounds of reasonableness. *See, e.g.*, *Brook*, 999 F.2d at 527-28 (reversing the arbitrator's reinstatement of an employee removed after being convicted of

possessing cocaine with intent to distribute, holding that the nexus between the misconduct and the efficiency of service is presumed where the employee is involved with drug trafficking, even if limited to off-duty hours, and that removal is not so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion).

¶15     Accordingly, we VACATE that portion of the initial decision mitigating the agency's penalty and SUSTAIN the appellant's removal. This constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e5(f) and 29 U.S.C. § 794a.

FOR THE BOARD:                    _____
                                 William D. Spencer
                                 Clerk of the Board

Washington, D.C.